# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELVIN LASSITER, PRO SE,** | : | |
| **Plaintiff** | : | |
| vs. | : | |
| | : | |
| **TODD BUSKIRK, ET AL.,** | : | |
| **Defendants** | : | No. 03-5511 |

Gene E.K. Pratter, J.        Memorandum and Order        June 22, 2006

Defendants Todd Buskirk and James Smith move for an entry of summary judgment in their favor with respect to pro se plaintiff Melvin Lassiter's claim of a violation of 42 U.S.C. § 1983. For the reasons discussed below, the Defendants' motion will be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Melvin Lassiter, the pro se plaintiff in this case, was at all relevant times a pretrial detainee in the Northampton County Prison. The circumstances surrounding this case began on July 6, 2003 when Mr. Lassiter was charged, by criminal complaint, with attempt to commit kidnaping, interference with the custody of a child and luring a child into a motor vehicle. Defendants' Exhibit B. On that same day, a warrant to take Mr. Lassiter into custody pending a hearing on the charges was authorized. Id. On July 7, 2003, Mr. Lassiter was taken to Northampton County Prison, where a classification specialist at the prison completed an "Objective Jail Classification Initial Classification Tally Sheet" to determine at what level of prison security to secure Mr. Lassiter. Defendants' Ex. C. Primarily because the crimes with which Mr. Lassiter was charged were considered to be of the "highest severity" and because Mr. Lassiter had two or more prior felony convictions, the classification specialist recommended that

Mr. Lassiter be placed at the maximum custody level and housing assessment. Id.

Later that same month, on July 21, 2003, Andre Fordham[1] was arrested and delivered to Northampton County Prison; he was placed in the same cell with Mr. Lassiter. Defendants' Ex. C. Mr. Fordham was charged with crimes classified as "high" severity and had a "high" serious offense history. Id. at Section II, ¶¶ 1, 2.[2] Mr. Fordham had no history of institutional disciplinary actions, and, although there was a space on the intake forms to denote such issues, no medical problems were indicated. Id. at Section 2, ¶ 4; Section 3, ¶ B. The specialist conducting Mr. Fordham's evaluation did list "violence threat" as a "special management" issue deemed to apply to Mr. Fordham. Id. at Section III, ¶ B. Unbeknownst to either Mr. Lassiter or either of the Defendants, Mr. Fordham was allegedly infected with the AIDS virus.[3]

The circumstances giving rise to the present claim occurred on or about July 29, 2003, when a "wrestling tussle" occurred between Mr. Lassiter and Mr. Fordham after a disagreement with respect to some personal belongings. M. Lassiter Dep. at 39:6-9. The altercation began when Mr. Fordham attempted to punch Mr. Lassiter when Mr. Lassiter attempted to grab a toiletries bag away from Mr. Fordham. M. Lassiter Dep. at 38:6-16. During the altercation that ensued and while Mr.

---

[1] The Court notes that Mr. Lassiter refers to this individual as Andre Ford and, in fact, "Andre Ford" is listed on the prison administrative records as an alias that Mr. Fordham utilized. Defendants' Ex. E. Because "Fordham" appears to be the appropriate surname, the Court will refer to this individual as Mr. Fordham.

[2] The category stated on the form was "serious violence threat" and the person completing the form for Mr. Fordham crossed out the word "serious."

[3] The status of Mr. Fordham as being either HIV-positive or suffering from AIDS has not been verified. The Court notes that there is a distinction between the two, but, as discussed in the Court's prior memorandum, the distinction is not relevant in this case. April 28, 2005 Memorandum and Order at n.2. For purposes of this motion, the Court will presume that Mr. Fordham was, at the relevant time, either HIV-positive or suffered from AIDS.

Fordham's mouth was apparently bleeding, Mr. Fordham bit Mr. Lassiter, allegedly causing Mr. Lassiter's hand to bleed from a deep gash.

Mr. Lassiter filed his initial complaint in this action on October 2, 2003, followed by the filing of an amended complaint on December 29, 2003, after he was granted leave to file the claim in forma pauperis. Mr. Lassiter then filed a second amended complaint on July 9, 2004. Mr. Lassiter originally sued a number of individuals. On April 28, 2005, the claims against all of the defendants except for those charged against Todd Buskirk and James Smith were dismissed for failing to state claim upon which relief could be granted. Messrs. Buskirk and Smith answered the second amended complaint on August 1, 2005. Discovery in the case ensued and has been completed. Messrs. Buskirk and Smith now move for an entry of summary judgment.

**DISCUSSION**

    A.    **Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.

Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

B.     **Whether the Defendants Exhibited Deliberate Indifference**

In support of their motion, the Defendants argue that summary judgment is appropriate because there is no evidence on the record from which either Mr. Buskirk or Mr. Smith could be found liable for the purported injuries suffered by Mr. Lassiter. In response, Mr. Lassiter argues that the Defendants had knowledge both of Mr. Fordham's tendency toward violent behavior as well as his medical condition. Mr. Lassiter specifically argues that the Defendants were aware of Mr. Fordham's prior criminal history, which involved charges of aggravated assault, and that the "medical clearance" required by the prison classification rules would have notified the Defendants of Mr. Fordham's status as being infected with HIV. Thus, Mr. Lassiter posits that the Defendants knowingly placed him in unreasonable danger, presumably effecting inappropriate punishment upon him.[4]

---

[4] The Court infers the latter argument from Mr. Lassiter's pro se submission.

Pursuant to the Fourteenth Amendment, the government has no authority to punish a pretrial detainee prior to an adjudication of guilt in accordance with due process of the law. Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, not all restrictions imposed on a pretrial detainee amount to punishment, as there is a distinction between imposing an inappropriate punitive measure on a pretrial detainee and exercising necessary regulatory restraints. Bell, 441 U.S. at 536. In ascertaining whether a particular behavior or condition was an inappropriate punitive measure, a court must determine whether an alleged restriction was imposed for the purpose of punishing an individual or whether it was incident to some other legitimate governmental purpose. Id. at 538. In assessing the claims of both pretrial and convicted detainees with respect to prison conditions, courts are cautioned not to become "enmeshed in the minutiae of prison operations." Bell, 441 U.S. at 562.

Pretrial detainees asserting a constitutional violation based on non-medical conditions of their confinement must prove that prison officials acted with deliberate indifference and that the prisoner suffered a deprivation of "the minimal civilized measure of life's necessities." Kost v. Kozakiewicz, 1 F.3d 176, 188 (3d Cir. 1993) (citing Wilson v. Seiter, 501 U.S. 294 (1991)). A lack of due care by an official that results in unintended injury does not implicate an injury to life, liberty or property that is actionable under the Due Process Clause. Davidson v. Cannon, 474 U.S. 344, 347 (1986). For example, where the violence suffered by a prisoner is at the hands of another prisoner, liability under Section 1983 will lie "if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." Davidson v. O'Lone, 752 F.2d 817, 828 (3d Cir. 1984). An example of such a case is found in Wade v. Haynes, 663 F.2d 778 (8th Cir. 1981).

In <u>Wade</u>, the plaintiff was an 18 year-old prisoner who was small in stature and had previously been detained in a "special treatment unit" because he was designated as susceptible to physical abuse from members of the general population. <u>Wade</u>, 663 F.2d at 781. The plaintiff was subsequently assigned to a cell in the "administrative segregation unit" of the prison. <u>Id</u>. On the same day, the warden moved two members from the general prison population into the plaintiff's cell, despite knowing that one of those inmates had been sent to the "administrative segregation unit" for fighting and that it was recommended to separate the inmate from the general prison population. <u>Id</u>. at 781. The plaintiff was then harassed and sexually assaulted by both of his cellmates. <u>Id</u>. The <u>Wade</u> court concluded that the case had been properly presented to a jury, and that the defendant prison officer was not entitled to the defense of immunity because there was evidence that the officer had acted recklessly and with callous indifference to the plaintiff's safety.

The case before this Court does not present equivalent evidence of recklessness or indifference. Upon a review of the record evidence here, the Court concludes that even assuming that the facts that Mr. Lassiter asserts are disputed, summary judgment in favor of the Defendants is appropriate. In short, there is no evidence from which a reasonable jury could conclude that either of the Defendants knew or could foresee that such an altercation between Mr. Lassiter and Mr. Fordham would occur or that they acted with callous or reckless indifference with respect to preventing the altercation.

The primary issue in this case, under the standard set forth in <u>O'Lone</u>, is for the Court to determine whether the Defendants acted with callous or reckless indifference regarding Mr. Lassiter's safety. As stated in the Court's April 28, 2005 Memorandum and Order in which the Defendants' motion to dismiss the complaint was denied in part, the callousness or recklessness

required to sustain a violation of Mr. Lassiter's due process rights might be demonstrated if Defendants had knowledge that Mr. Fordham was a violent individual who posed a significant threat to himself or others. However, the record evidence developed during discovery and presented in support of this motion demonstrates no such knowledge.

The Court first notes that according to the evidence the prison conducted the same objective analysis with respect to both Mr. Lassiter and Mr. Fordham before determining that each would be appropriately placed in the maximum security housing unit.[5] At that time, Mr. Fordham had no history of needing institutional discipline and the behavioral file kept by the prison reflected no altercations with corrections staff or other violent incidents. T. Buskirk Affidavit at ¶ 10.

Secondly, with respect to Mr. Fordham's medical condition, at the time Mr. Lassiter was placed in the cell with Mr. Fordham, neither of the Defendants had any knowledge that Mr. Fordham was either HIV positive or had AIDS. J. Smith Affidavit at ¶ 2; T. Buskirk Affidavit at ¶ 7. Although Mr. Lassiter asserts that the prison classification rules require medical clearance before an inmate may be placed in a cell in the general population, the Court notes that this fact is not material to this dispute because, as discussed in this Court's prior Memorandum and Order regarding the

---

[5] In making a determination with respect housing assignments for both Mr. Lassiter and Mr. Fordham, the prison officials applied an objective analysis which included consideration of each defendant's current charges, prior felony and misdemeanor charges, the history of each individual's serious offenses, escapes, institutional disciplinary issues and alcohol and/or drug abuse. Defendants' Exs. C, D. The housing analysis also included a "check-off" area in which the person completing the form could indicate whether a detainee presented certain "special management issues." Id. Mr. Lassiter and Mr. Fordham were each designated to suffer from a substance abuse problem, and Mr. Lassiter was designated as a multi-state offender and a potential risk for suicide. Id. at Ex.C. Mr. Fordham was also designated as being "wanted" in New Jersey, and was considered a "violence threat." Id. at Ex. D. Based on these objective assessments, both Mr. Lassiter and Mr. Fordham were recommended to be placed in a maximum security housing assignment. Defendants Exs. C, D.

Defendants' Motion to Dismiss the Complaint, the law does not require that inmates who are infected with HIV or have AIDS be segregated from the general prison population. <u>See</u>, e.g., <u>Hoover v. Watson</u>, 886 F. Supp. 410, 417 (D. Del. 1995) ("the failure to segregate an AIDS-infected prisoner from the general population fails to rise to the level of a constitutional violation"); <u>Feigley v. Fulcomer</u>, 720 F. Supp. 475, 482 (E.D. Pa. 1989) (finding that failure to automatically segregate inmates who have tested positively for the virus causing AIDS not cruel and unusual punishment); <u>Maddox v. Goode</u>, Nos. 88-7880-83, 88-8211, 1989 WL 17544, at *2 (E.D. Pa. Feb. 27, 1989)(noting that there is no evidence of risk associated with being housed in a prison cell with inmate who is HIV-positive or is suffering from any stage of AIDS); <u>Oladipupo v. Austin</u>, 104 F. Supp. 2d 626, 635 (W.D. La 2000) (finding no affirmative duty under the Constitution to segregate HIV-infected from non-infected detainees); <u>Goss v. Sullivan</u>, 839 F. Supp. 1532, 1536 (D. Wyo. 1993) (noting that the "weight of authorities" holds that failure to segregate HIV-infected prisoners does not rise to the level of a constitutional violation).

As already stated, Mr. Lassiter's due process rights might be implicated if there were evidence that one or both of the Defendants were aware that Mr. Fordham was HIV-infected or had AIDS *and* posed a significant risk of violence directed against others. There is no evidence of such knowledge here. In fact, the altercation that occurred between Mr. Lassiter and Mr. Fordham, by Mr. Lassiter's own account, arose from a dispute between the two men, and was not a "surprise" attack or ambush by Mr. Fordham. <u>M. Lassiter Dep.</u> at 37:8-11; 38:6-22. In short, the altercation between Mr. Lassiter and Mr. Buskirk appears to have been the type of altercation that, unfortunately, might occur fairly frequently between cellmates in a prison who, for whatever reason, are not able to get along peaceably. The Court is not unsympathetic to the difficulty Mr. Lassiter now may face with

respect to his health as a consequence of a self-described "wrestling tussle" involving personal belongings. M. Lassiter Affidavit at 39:7. However, absent evidence that Mr. Fordham had a history of violence[6] which either Mr. Buskirk or Mr. Smith knew about when placing Mr. Lassiter in the cell with Mr. Fordham, a reasonable jury could not conclude that either of the Defendants violated Mr. Lassiter's due process rights under the applicable legal standards. There is no such evidence on the record here. Therefore, the Defendants' motion for summary judgment will be granted.[7]

---

[6] The Court notes that Mr. Lassiter argues such a history was apparent because some of Mr. Fordham's prior charges included aggravated assault. As logical as this argument may seem, the practicality of requiring all inmates who have had aggravated assault charges to be segregated from other inmates is questionable. Moreover, the fact that "violence" was checked off as a "special management" issue on Mr. Fordham's housing assessment does not provide Mr. Lassiter assistance in meeting his burden of establishing that the Defendants knowingly placed Mr. Lassiter in danger of serious injury. "Violence" can describe an individual with a propensity to wield weapons, throw objects, or other behavior that does not involve physical, person to person contact. As noted above, Mr. Fordham's housing assessment also indicated that he had no record of requiring institutional discipline. This singular and general notation regarding violence is not sufficient evidence from which a jury could conclude that either or both of the Defendants had any indication that Mr. Fordham was a violent individual who was likely not only to physically attack a cellmate with his person (as opposed to with an object), but also to do so in a manner that could cause serious harm of the type potentially at issue here.

[7] In addition to arguing that the evidence is not sufficient to support Mr. Lassiter's claim, the Defendants alternatively argue that Messrs. Smith and Buskirk are entitled to qualified immunity from this suit. In general, government officials performing discretionary functions are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982).

Courts apply a two-part test to determine whether qualified immunity applies in a particular case. First, a court must consider whether the facts, considered in a light most favorable to the allegedly injured party, show that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Once it is shown that a constitutional right was violated, a court must then consider whether the right was clearly established, such that the official had reason to know the consequences of his or her specific actions. See Saucier, 533 U.S. at 201; Anderson v. Creighton, 483 U.S. 635, 636-37 (1987); see also Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000). A "good faith" belief in the legality of conduct is not sufficient to support a finding of qualified immunity. Parkhurst v. Trapp, 77 F.3d 707, 712

9

**CONCLUSION**

For the reasons discussed above, the Defendants' Motion for Summary Judgment will be granted. An appropriate Order follows.

S/Gene E.K. Pratter
Gene E.K. Pratter
United States District Judge

June 22, 2006

---

(3d Cir. 1996). Rather, a court must determine whether "a reasonable person could have believed the defendant's actions to be lawful in light of clearly established law and the information he possessed." Id.

In this case, the Court has concluded that there is insufficient evidence to support a constitutional claim. Therefore, the Court does not reach the issue of qualified immunity in the context of this motion.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELVIN LASSITER, <u>PRO</u> <u>SE</u>,** | : | |
| **Plaintiff** | : | |
| vs. | : | |
| | : | |
| **TODD BUSKIRK, ET AL.,** | : | |
| **Defendants** | : | No. 03-5511 |

O R D E R

**AND NOW**, this 22nd day of June 2006, upon consideration of the Motion for Summary Judgment of Defendants Buskirk and Smith (Docket No. 37) and the response thereto (Docket No. 39), it is **ORDERED** that the Motion is **GRANTED**. The Clerk of Court is instructed to enter judgment in favor of Defendants Todd Buskirk and James Smith, and to mark this case as closed.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge